UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X

DARIO GARO,

               Plaintiff,

      -against-                      **REPORT AND RECOMMENDATION**
                                        **07-CV-3794(CBA)(LB)**

FEDERAL EXPRESS CORPORATION,

               Defendant.

----------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

      Plaintiff, Dario Garo (hereinafter "plaintiff"), brings this *pro se* employment discrimination action alleging that Federal Express Corporation (hereinafter "FedEx" or "defendant") discriminated against him and wrongfully terminated him based on his race in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e to 2000e-17 (hereinafter "Title VII"). FedEx moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] The Honorable Carol B. Amon referred defendant's motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended that defendant's motion should be granted.

---

[1] Defendant provided plaintiff with the requisite notice to *pro se* litigants pursuant to Local Civil Rule 56.2.

## BACKGROUND

The following facts are not disputed or are evaluated in the light most favorable to plaintiff.[2] Plaintiff is a Hispanic male who worked as a courier for FedEx from July 23, 1998 through October 26, 2006 at the station located on 34th Street in Manhattan. Garo Dep. 21:14-22:13, May 2, 2008.[3] Plaintiff's performance record reflects that his job performance steadily improved from October 1998, when he was rated a "4.0," to April of 2006, when he was rated a "6.1." Garo Dep. 39:7-12; Pl.'s Opp. to Mot. Summ. J. ("Pl.'s Opp."), Exhibit D. While plaintiff's counseling history from June 2000 to August 2006 includes criticism of his job performance, it also complimented him as being helpful, Exhibit 6 at 17,[4] showing "excellent teamwork," id. at 8, doing an "excellent job with his scans," id. at 5, 6, performing "excellent work overall," id. at 4, and doing a "great job," id. at 2.

However, defendant argues that "during the last six months of his employment, plaintiff's performance drastically deteriorated and he received verbal counseling for attendance and three warning letters based on his repeated violations of the Acceptable Conduct Policy P2-5 (hereinafter "Acceptable Conduct Policy") of the FedEx People Manual (hereinafter "People Manual")." Mem. of Law in Support of Def.'s Mot. Summ. J. ("Def.'s Mem.") at 2. The "Acceptable Conduct" section of the People Manual sets forth FedEx's policy. Compl. at 9.

---

[2] Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs on which the moving party relies in arguing that there is no genuine issue to be tried. See Local Rule 56.1(a); See also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). FedEx filed a 56.1(a) statement, however, plaintiff did not file a corresponding statement. The Court accepts as true only those facts which are supported by admissible evidence in the record. Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); Giannullo, 322 F.3d at 143 n.5.

[3] The Court requested the complete deposition transcript of plaintiff Dario Garo, which defendant provided on July 14, 2009. As the Court refers to parts of the transcript not already on record, the Clerk of Court shall docket plaintiff's complete deposition transcript.

[4] All references are to the exhibits attached to defendant's Motion for Summary Judgment, unless otherwise specified.

Plaintiff acknowledges he knew about the People Manual, had reviewed it, and had signed both a handbook acknowledgment form and a 2002 handbook receipt. Garo Dep. 22:19-25:1.

The People Manual states that FedEx "expects all employees to demonstrate the highest degree of integrity, responsibility, and professional conduct at all times . . . Violations of company or departmental rules may constitute misconduct . . . [which] may result in severe disciplinary actions up to and including termination." Compl. at 9. Such misconduct includes, but is not limited to,

> Disruptive conduct while on duty or while on company property; insubordination or refusal to follow instructions or perform assigned work in a timely manner without valid reason; threatening, intimidating, coercing, directing abusive language, or displaying blatant or public disrespect toward any employee or customer while on duty, on company property, at collection sites, or at off-site company meetings and functions; openly making or publishing false, vicious, or malicious statements concerning the company, any employee, or customer.

Id. at 10. When misconduct occurs, it is FedEx's policy to investigate the misconduct and write a warning letter to the employee, which serves as a notification of behavioral deficiency. Exhibit 2 at 2-4. An employee may be suspended during this time. Id. As plaintiff acknowledges, FedEx policy states that an employee will normally be terminated after he or she receives three warning letters for behavioral deficiency within a twelve month period. Garo Dep. 43:4-7; Exhibit 2 at 4.

On April 17, 2006, plaintiff delivered twenty-four late packages. Exhibit 3. As a result, plaintiff received a warning letter for deficient conduct. Id. The letter stated that plaintiff "failed to follow proper procedures when [he] did not call dispatch and request [] help" and "used poor judgment when [he] did 9 single piece stops between 10:18 and 10:30 [a.m.] instead of doing 3 multiple piece stops that would have reduced [his] lates to 11 pieces." Id. While plaintiff admits

3

he delivered twenty-four late packages on April 17, 2006, he argues "[he was] not known for having 'lates' on Monday mornings, [he] never made it a habit during [his] eight years with the company to have lates on Monday mornings" and therefore did not "deserve the deficiency letter that Mr. Maranino so gladly gave to [him]." Compl. at 11-12.

On April 20, 2006, plaintiff raised an issue regarding Maranino, a FedEx manager, giving more overtime hours to employees working on the belt than to plaintiff and other employees in the courier group. Garo Dep. 70:18-24, 71:12-17. Plaintiff told Maranino, *inter alia*, "what you're doing is not right." Id. at 72:16-17. Plaintiff raised the issue to Maranino on FedEx property in front of many other employees. Id. at 71:7-11. When plaintiff raised this issue, Maranino asked plaintiff to go to his office, but plaintiff refused. Id. at 74:3-9. Plaintiff testifies that he refused to go to Maranino's office because Maranino "was mad" and if they were to go "behind closed doors, anything [could] happen." Id. at 74:12-14. Maranino could "turn around and say [plaintiff] did something" because "he was in a state of anger." Id. at 74:14-16. Subsequently, Maranino told plaintiff to go home and suspended him. Id. at 74:22-25. As a result, plaintiff received a second warning letter for making "inappropriate and unprofessional comments . . . in front of all the employees [and for being] insubordinate when [he] refused to leave when asked." Exhibit 5.

On October 17, 2006, plaintiff was running late for a pick-up at 1441 Broadway. Garo Dep. 81:17-82:2. When plaintiff arrived at the building the freight elevator was closed, so plaintiff used the "real elevators" to bring down the packages. Id. at 82:2-15. While plaintiff was in the elevator, a security guard told plaintiff to get out of the elevator because it was not supposed to be used for freight. Id. at 83:10-17. Plaintiff apologized, but said he was running late and the service elevator was closed. Id. at 83:22-25. When plaintiff arrived in the lobby, the

4

guard was standing outside the elevator. Id. at 84:12-15. After a verbal altercation, id. at 84:21-25, the guard grabbed plaintiff's boxes and "threw [them] out the back door of the freight area," id. at 85:21-23. Plaintiff called the guard a "terrorist." Id. at 86:17-19.

On October 20, 2006, plaintiff was suspended pending an investigation of the events that occurred on October 17, 2006. Garo Dep. 78:3-6, 92:2-4; Exhibit 7. Plaintiff was asked to submit a written statement to his manager about what happened at 1441 Broadway on October 17, 2006. Id. at 89:7-12. Plaintiff did so and stated, *inter alia*, "as [the guard] walked away I called him a terrorist because of his ethnic background." Exhibit 9 at 4.[5] Plaintiff also alleges that defendant "changed [his] words into something "inappropriate", Garo Dep. 171:20-25, and interpreted his statement as "abusive" because it has a "history of prejudice and discrimination," Compl. at 12. Plaintiff further states that he did not use any profanity, Garo Dep. 172:6-8, and that he could "have easily [gotten] physical with the guy" but "used all [his] restraint not to," id. at 180:13-19. However, on October 26, 2006, plaintiff received his third warning letter for deficient conduct "within a twelve month period" and was terminated "in accordance with [FedEx] policy." Exhibit 8. After plaintiff was terminated, his route was filled by a Hispanic courier. Compl. at 11.

## PROCEDURAL HISTORY

On November 8, 2006, plaintiff filed an employment discrimination charge with the Equal Employment Opportunity Commission (hereinafter "EEOC") alleging that FedEx terminated him based on his race. Compl. at 4, 6. The EEOC issued plaintiff a "right to sue"

---

[5] But see Compl. at 12 (plaintiff states he did not call the security guard a terrorist because of his racial background but because the guard terrorized plaintiff, was abusive, removed packages from plaintiff's hands and threw them out the back door). Plaintiff also includes a definition of terrorist as a "person or group who uses force and threats to intimidate another person or group." Compl. at 12.

5

letter on June 11, 2007. Id. Plaintiff filed his complaint in this Court on August 27, 2009. Compl. at 5. The parties completed discovery and defendant moves for summary judgment. Plaintiff opposes the motion and FedEx replies. FedEx also moves to strike paragraphs 4-6 and Exhibits B and C of plaintiff's opposition.[6]

## DISCUSSION

### I. Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997) (quoting Anderson, 477 U.S. at 248 ); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000). For the purposes of summary judgment, the facts here are viewed in the light most favorable to plaintiff.

"An adverse party may not rest upon the mere allegations or denials of the adverse

---

[6] Although the Court notes defendant's objection to paragraphs 4-6 and Exhibits B and C of plaintiff's opposition, defendant's motion to strike is denied.

party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Sista v. CDC Ixis North America, Inc. 445 F.3d 161, 169 (2d Cir. 2006). In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. v. Jones Chemical, Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252). When a party is proceeding pro se, the Court is obliged to "interpret that party's supporting papers liberally, that is, 'interpret them to raise the strongest arguments that they suggest.'" Forsyth v. Federation Employment and Guidance Service, 409 F.3d 565, 569 (2d Cir. 2005) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

## II. Title VII

This case presents the unfortunate circumstance of an employee who had a good job, did well on the job for a number of years, but then violated the company's policy and was fired. Title VII prohibits an employer from discriminating against any individual with respect to "compensation, terms, conditions, or privileges of employment, because of such an individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006). A plaintiff bringing a Title VII action bears the burden of proving discrimination by a preponderance of the evidence. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993); Holcomb v. Iona Coll., 521 F.3d 130, 138 (2d Cir.

2008). Employment discrimination claims are analyzed under the McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000) ("McDonnell Douglas and subsequent decisions have 'established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases'" (internal citation omitted)). In order to establish a *prima facie* case of discrimination, plaintiff must show that (1) he is a member of a protected class; (2) he is qualified to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class. Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003). A plaintiff's burden to establish a *prima facie* case is "minimal." Holcomb, 521 F.3d at 139 (citing St. Mary's Honor Ctr., 509 U.S. at 506).

If plaintiff succeeds in establishing a *prima facie* case, a presumption of discrimination arises and the burden shifts to defendant to present a legitimate, non-discriminatory reason for the adverse employment action. Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004) (citation and quotation marks omitted). If defendant meets this burden and offers a legitimate, non-discriminatory reason, then the burden shifts back to the plaintiff to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." Reeves, 530 U.S. at 133. However, the Second Circuit has pointed out "purely conclusory allegations of discrimination, absent any concrete particulars," are insufficient. Cameron v. Community Aid For Retarded Children, Inc., 335 F.3d 60, 63 (2d Cir. 2003) (citing Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985)). "In short, the question [at the pretext stage] becomes whether the evidence, taken as a whole,

8

supports a sufficient rational inference of discrimination." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000); see also James v. New York Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000) (defendant "will be entitled to summary judgment . . .unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination").

### A. *Prima Facie* Case of Discrimination

Plaintiff fails to establish a *prima facie* case of discrimination under McDonnell Douglas. FedEx does not dispute that plaintiff is a Hispanic and thus a member of a protected class. Def.'s Mem. at 7. Likewise, FedEx does not dispute that plaintiff suffered an adverse employment action when he was terminated. Id; See Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (termination of employment is an adverse employment action) (internal quotation marks omitted). However, defendant disputes that plaintiff was performing his duties satisfactorily and that the adverse action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class. Defs. Mem. at 7. Defendant argues that although plaintiff's job performance steadily improved during his eight years at FedEx, his performance "drastically deteriorated" during his last six months of employment. Def.'s Mem. at 2.

The Second Circuit has formulated the "qualification" prong as requiring that a plaintiff show that he "was performing duties satisfactorily." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997). A plaintiff need only establish "basic eligibility for the position at issue" by showing that he "possesses the basic skills necessary for the performance of [the] job[]." Slattery v. Swiss ReInsurance America Corp., 248 F.3d 87, 91 (2d Cir. 2001). This definition of qualified comports with the *de minimis* burden placed on plaintiff to establish a *prima facie*

employment discrimination case. Zimmermann v. Associates First Capital Corp., 251 F.3d 376 (2d Cir. 2001). The qualification prong "must not be interpreted in such a way as to shift into the plaintiff's *prima facie* case an obligation to anticipate or disprove the employer's proffer or a legitimate, non-discriminatory basis for its decision." Gregory v. Daly, 243 F.3d 687, 696 (2d Cir. 2001). To establish "qualification," plaintiff "need not show perfect performance or even average performance." Gregory, 243 F.3d at 696 (quoting Powell v. Syracuse Univ., 580 F.2d 1150, 1155 (2d Cir. 1978)). Plaintiff only needs to make a minimal showing "that she possesses the basic skills necessary for the performance of the job." Id. at 696 (quoting Owens v. New York City Housing Auth., 934 F. 2d 405, 409 (2d Cir. 1991)); see also Olle v. Columbia University, 332 F.Supp.2d 599, 616 (S.D.N.Y. 2004) ("Where an employee has been terminated, 'the inference of minimal qualification is, of course, easier to draw than in a hiring or promotion case because, by hiring the employee, the employer itself has already expressed a belief that []he is minimally qualified.'")(internal citations omitted). In light of plaintiff's job with defendant for eight years, Garo Dep. 21:14-22:13, his good performance ratings every year, Pl.'s Opp., Exhibit D, and his positive feedback, such as "excellent job," Exhibit 6 at 2, 4-6, 8, 17, plaintiff establishes that he was qualified for his job position.

However, plaintiff has not established that his termination occurred under circumstances giving rise to an inference of discrimination based on his membership in a protected class. Plaintiff must offer "admissible evidence show[ing] circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005)(internal citations omitted). Plaintiff may demonstrate an inference of discrimination by showing that his position was filled by someone who is not a member of the protected class. See James, 233 F.3d at 153-154 ("[a *prima facie* case] is satisfied

10

by a showing of 'membership in a protected class, qualification for the position, an adverse employment action,' and *preference for a person not of the protected class*" (emphasis added)). However, as defendant argues and plaintiff acknowledges, plaintiff's position was filled by a Hispanic who had worked for FedEx for twelve years. Garo Dep. 114:2-8, Def.'s Mem. at 11. This fact weighs against an inference of discrimination. See Montanile v. Nat'l Broad. Co., 211 F.Supp.2d 481, 487 (S.D.N.Y. 2002) (awarding summary judgment and noting that the fact "[t]hat a plaintiff is replaced by another in the same protected class weighs heavily against the inference that she suffered discrimination").

Moreover, for purposes of making out a *prima facie* case, "a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group'-is a recognized method of raising an inference of discrimination." Mandell v. County of Suffolk 316 F.3d 368, 379 (2d Cir. 2003) (internal citation omitted). In order to make such a showing, plaintiff "must show []he was similarly situated in all material respects to the individuals with whom []he seeks to compare [him]self." Id. In order for employees to be similarly situated, they must be "subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's." Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000) (internal citation omitted).

In order to prove that non-minority employees were treated differently than he was, plaintiff argues that two non-minority managers also got into an argument, while on duty on company property, used profane language, and made derogatory and insulting remarks to each other in front of their peers, but were not given deficiency letters. Compl. at 11. Plaintiff states that these managers are "not his peers, [but] they are employees of the same company and the same rules apply to them." However, plaintiff, a non-manager, fails to establish that he was

11

similarly situated in all material respects to these managers. Therefore this allegation fails to raise an inference of discrimination. Plaintiff also alleges that two similarly situated white employees were not terminated for falsifying records and working under the influence of alcohol, which are termination-worthy offenses. Garo Dep. 115:15-117:4. However, as defendant points out, plaintiff fails to establish that these employees "received three Warning Letters within a twelve month period and were not terminated by FedEx." Def.'s Mem. at 12. Therefore, plaintiff does not demonstrate that he was treated less favorably than any similarly situated employee outside his protected group. As such, plaintiff does not raise an inference of discrimination and fails to establish a *prima facie* case of discrimination.

### B.     Legitimate, Non-Discriminatory Reason for Termination

Even assuming that plaintiff had made out a *prima facie* case, FedEx has met its burden of showing a legitimate, non-discriminatory reason for plaintiff's termination. See Patterson, 375 F.3d at 221 (after plaintiff produces evidence showing a *prima facie* discrimination claim, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action). FedEx argues that plaintiff's job performance "drastically deteriorated" during his last six months of employment, Def.'s Mem. at 2, and plaintiff received three warning letters for deficient conduct between April 17, 2006 and October 26, 2006. Exhibits 3, 5, and 8. FedEx's Acceptable Conduct Policy states that an employee who receives three notifications of deficiency within a twelve month period is generally terminated. Exhibit 2 at 4. Defendant therefore states that plaintiff was terminated "in accordance with well-established policy." Def.'s Mem. at 14.

According to defendant, plaintiff was responsible for the "efficient and safe delivery and pick-up of packages and documents, while representing the company in a professional manner." Def.'s Mem. at 8; Exhibit 4. However, defendant states that on April 17, 2006, plaintiff violated FedEx's Acceptable Conduct Policy when he delivered twenty-four late packages. Def.'s Mem. at 8. As a result, defendant argues that plaintiff received his first warning letter, which stated that he "failed to follow proper procedures when [he] did not call dispatch to request [] help." Exhibit 3. Plaintiff does not deny that he delivered twenty-four late packages on April 17, 2006. Garo Dep. 66:25-68:1; Compl. at 11.

Defendant also states that specific violations of the Acceptable Conduct Policy include "[d]isruptive conduct while on duty or while on Company property" and "[i]nsubordination or refusal to follow instructions or perform assigned work in a timely manner without valid reason." Def.'s Mem. at 9. On April 20, 2006, plaintiff raised an issue about overtime pay to his manager on company property and in front of other employees and refused to go to his manager's office when instructed to do so. Id. As a result, plaintiff received a second warning letter, which stated that he made "inappropriate and unprofessional comments . . . in front of all the employees" and was "insubordinate" in violation of FedEx's Acceptable Conduct Policy. Exhibit 5.

Defendant's Acceptable Conduct Policy also states that, "Acceptable Conduct involves . . . sincere respect for the rights and feelings of others[,] . . . personal conduct . . . [that] avoids . . . any unfavorable reaction from current or potential customers . . . [and] [t]hreatening, intimidation, coercing, directing abusive language, or displaying blatant or public disrespect towards any . . . employee or customer while on duty . . . at collection sites. . . ." On October 17, 2006, plaintiff called a security guard at a customer location a "terrorist." Compl. at 12; Exhibit 9 at 4. The third and final warning letter issued to plaintiff stated that he "admitted to using

abusive language towards the security guard" and that his behavior was in violation of FedEx policy. Exhibit 8. Defendant therefore argues that plaintiff received three notifications within a twelve month period and was therefore terminated. Defendant thus demonstrates a legitimate, non-discriminatory reason for plaintiff's termination.

### C. Pretext

The burden then shifts back and remains with plaintiff. Reeves, 530 U.S. at 133. The relevant factors a court should consider in determining whether plaintiff's evidence, taken as a whole, sufficiently demonstrates pretext are: "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employers explanation is false, and any other evidence that supports [or undermines] the employer's case." James, 233 F.3d at 156 (citing Reeves, 530 U.S. at 148-149). A plaintiff need not always introduce additional, independent evidence of discrimination. Reeves, 530 U.S. at 149. Rather, a plaintiff must establish that defendant's proffered reasons are false, McCarthy v. N.Y. Technical Coll. of City Univ. of N.Y., 202 F.3d 161, 166 (2d Cir. 2000), or present a genuine issue of fact as to whether "the employer's proffered explanation is unworthy of credence," Jetter v. Knothe Corp., 324 F.3d 73, 77 (2d Cir. 2003) (internal citation omitted).

Assuming, *ad arguendo*, that plaintiff had demonstrated a *prima facie* case, plaintiff has failed to establish that FedEx's proffered reason for his termination was pretextual. To counter defendant's argument that his job performance "drastically deteriorated" during his last six months of employment, Def.'s Mem. at 2, plaintiff alleges that his job performance did not decline because he had a "[performance] rating of 6.0 in April of 2005 and a rating of 6.1 in April of 2006," Pl.'s Opp., Exhibit D. However, even if plaintiff's ratings did improve through

April 2006, he received his three warning letters on April 17, 2006, April 21, 2006 and October 26, 2006. Exhibits 3, 5, 8. As such, plaintiff's ratings through April 2006 do not reflect his deficiencies between April and October 2006. Therefore, plaintiff's argument that his job performance did not decline does not establish pretext.

Plaintiff also argues that his "punishment did not fit the crime," Compl. at 12, and that each of the letters were "unfair," Garo Dep. 43:8-11. Although plaintiff admits that he delivered twenty-four late packages, he argues that he is never late on Mondays. Compl. at 11-12. Although plaintiff raised an issue to a manager in front of many employees on FedEx grounds and then refused to meet with the manager in his office, plaintiff argues that he disobeyed his manager because the manager was angry and he did not want to be behind closed doors with him. Garo Dep. 74:12-16. Also while plaintiff acknowledges calling a Middle Eastern security guard at a customer location a "terrorist," plaintiff argues that he did not intend to be abusive and that he used the word terrorist because the guard was "terrorizing" him. Compl. at 12. Plaintiff's allegations that defendant's actions were unfair do not establish pretext.

"[I]t is well settled that the mere fact that an employee disagrees with an employer's evaluation of that employee's misconduct or deficient performance, or even has evidence that the decision was objectively incorrect, does not necessarily demonstrate, by itself, that the employer's proffered reasons are a pretext for termination." Kalra v. HSBC Bank USA, N.A. 567 F.Supp.2d 385, 397 (E.D.N.Y. 2008) (citing McLee v. Chrysler Corp., 109 F.3d at 135); see also Kolesnikow v. Hudson Valley Hosp. Center, 622 F.Supp.2d 98, 112 (S.D.N.Y. 2009) ("[I]n the absence of evidence that Defendants acted in bad faith, failed to follow their ordinary disciplinary procedures or treated other employees differently . . . complaints about the adequacy of [Defendant's] investigation, even if accepted as true, cannot show pretext or defeat a summary

15

judgment motion); Rodriguez v. City of New York, No. 05 Civ. 5117 (JFB)(SMG), --- F.Supp.2d ---, 2008 WL 420015, at *13 (E.D.N.Y. Feb. 11, 2008)( "The fact that an employee disagrees with the results of an employer's decision regarding termination, or even has evidence that the decision was objectively incorrect or was based on a faulty investigation, does not automatically demonstrate, by itself, that the employer's proffered reasons are a pretext"); Ascione v. Pfizer, Inc., 312 F.Supp.2d 572, 578 (S.D.N.Y. 2004) ("[i]t would be improper for the Court to second-guess [an employer's] investigation, or make an independent determination as to whether or not [plaintiff]" engaged in the alleged misconduct); Brown v. Soc'y for Seaman's Children, 194 F.Supp.2d 182, 191 (E.D.N.Y. 2002) ("[A]lthough plaintiff felt she had been treated unfairly, ... [t]here simply is no basis in the record from which a rational juror could find that the reasons given for plaintiff's termination ... were false or a pretext for discrimination.")

Plaintiff further argues that he was fired "because FedEx has a culture of hostility towards minorities, and that a lack of meaningful standards and monitoring allow racial bias to infect discipline decisions." Compl. at 12. Plaintiff further alleges that defendant "has a history of disciplining minority employees more frequently and more harshly than non-minorit[y] employees for the same occurrences" and that defendant "does not take seriously any complaints about racial discrimination that are made by its minority employees." Id. at 11.[7] However, plaintiff testifies that he cannot "pinpoint one specific action" where FedEx disciplined minorities more frequently than non-minorities, Garo Dep. 45:22-46:4; Def.'s Mem. at 12, and that "nothing comes to mind" when asked for an example of FedEx issuing harsher discipline to

---

[7] Plaintiff states that he detailed incidents of discrimination at his FedEx station in a four-page letter he wrote to "Fred Smith" after he was terminated. Garo Dep. 174:21-25, 175:20-23, 177:7-11. However, plaintiff never produced this letter.

minorities than non-minorities for the same activities, Garo Dep. 46:19-47:3.[8] Furthermore, plaintiff admits that no one at FedEx ever said anything to him that was discriminatory, demeaning, or offensive, Garo Dep. 156:16-20, Def.'s Mem. at 11, and that he has never seen any FedEx documents containing discriminatory or offensive statements, Garo Dep. 157:11-16, Def.'s Mem. at 11. In his opposition to the motion for summary judgment, plaintiff alleges that "[FedEx] has used or has allowed the use of disciplinary codes as a means of hiding the discrimination policies that are used in [the FedEx] corporation." Pl.'s Opp. at 1. However, this conclusory statement does not demonstrate pretext or that FedEx disciplines minority employees in a discriminatory manner. Cameron, 335 F.3d at 63.

Finally, plaintiff proffers a list of FedEx employees who were terminated for receiving a third warning letter within or in the twelve months following plaintiff's termination. Pl.'s Opp., Exhibit A. However, this list of sixteen terminated employees does not establish pretext.[9] Even though all of the terminated employees listed were either Black or Hispanic, this list does not contradict FedEx's argument that all employees who receive three warning letters are terminated. Moreover, plaintiff admits that "90 percent of the station was Latinos, Black[s], and Orientals." Garo Dep. 114:25-115:2. In addition, as defendant argues, plaintiff does not establish that any non-minority employees who received three warning letters in a twelve month period were not terminated. Def.'s Reply Mem. of Law in Support of Mot. For Summ. J. at 3. As such, plaintiff does not establish pretext.

---

[8] However, plaintiff later testifies that he witnessed Sam McNeil, a black employee, terminated for "falsification" after seventeen years of service while Maranino, a manager, accused of the same charge, was merely suspended in 2006. Garo Dep. 64:10-22. Plaintiff also testifies that he was told that Frank Walsh, a former manager, disciplined two employees for speaking Spanish on the job. Id. at 173:12-16, 174:11-18. Plaintiff provided no further details regarding these incidents.

[9] Plaintiff also attaches a notice regarding a race discrimination class action against FedEx Western, which was settled in 2007, Pl.'s Opp., Exhibit B, and mentions an action in California against FedEx in 1988 or 1989, Garo Dep. 50:5-9; 181:13-20. However, these cases do not in and of themselves establish pretext in *this* case.

## CONCLUSION

Accordingly, it is respectfully recommended that defendant's motion for summary judgment should be granted. It is further recommended that for the purpose of an appeal *in forma paupris*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from a judgment entered herein would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438 (1962).

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Secretary of Heath and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: September 29, 2009
Brooklyn, New York